IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

WITTAYA THEERACHANON,      )
      *Plaintiff*,            )
                      )
        v.               )        Civil Action No.  3:23CV818 (RCY)
                      )
WESTLAKE FINANCIAL SERVICES,    )
*et al.*,                   )
      *Defendants*.          )
_____)

**MEMORANDUM OPINION**

Plaintiff Wittaya Theerachanon, proceeding *pro se*, filed this action against Defendants Westlake Financial Services ("Westlake"), Shanks Towing South LLC[1] ("Shanks Towing"), and Hotel Super8 Fredericksburg, VA[2] ("Super8") alleging breach of contract, wrongful repossession of her personally owned vehicle, and conspiracy between Defendants.  She also alleges that she is the victim of a hate crime based on the harassment she alleges took place during her stay at Super8's Fredericksburg location.  The case is presently before the Court on a number of pending motions—Westlake's Motion to Compel Arbitration, ECF No. 21, Westlake's Motion to Stay Pending Motion to Compel Arbitration, ECF No. 22, Super 8's Motion to Dismiss, ECF No. 23, Super8's Motion to Strike or Deny Plaintiff's Motion for Summary Judgment, ECF No. 26,[3]

---

[1] Plaintiff originally named only "Shanks Towing" in her Complaint. Compl. 2 (listing Defendants in Part B); Certificate of Service 3, ECF No. 1-16 (certifying that service had been made upon Shanks Towing). Subsequently, entity "Shanks, Inc." appeared in the action, claiming to have received a copy of the Complaint at a business location other than its principal place of business. Mem. Supp. Shanks Inc. Mot. Dismiss 1, ECF No. 10. As Plaintiff apparently agreed that the improper party had been served, the Court granted Shanks Inc.'s Motion to Dismiss and directed Plaintiff to serve the proper Defendant, Shanks Towing South LLC. Order, ECF No. 34.  Shanks Towing South LLC has since appeared and filed the Motion to Dismiss that, in part, underlies the present Memorandum Opinion, ECF No. 38.

[2] Defendant's actual corporate name is Shiv Sai VA, Inc. d/b/a Hotel Super 8 of Fredericksburg, VA.  The Court utilizes the name appearing on Plaintiff's Complaint and in her pleadings.

[3] Construing Plaintiff's filing docketed as ECF No. 12 as a Motion for Summary Judgment.

Shanks Towing's Motion to Dismiss, ECF No. 38—and two ostensible motions from Plaintiff: a "Motion to Declare the Right to Petition and to Request the Court to Enforce the Motion of Summary Judgment," ECF No. 27, and an "Opposing Motion" to Shanks Towing's Motion to Dismiss, ECF No. 41.  Super8 seeks dismissal with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6), while Shanks Towing seeks dismissal based on Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(4), 12(b)(5), and 12(b)(6).  Meanwhile, Westlake asks that the Court compel the parties to engage in arbitration pursuant to the arbitration agreement between Plaintiff and Westlake.  The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process.  E.D. Va. Loc. Civ. R. 7(J).  For the reasons set forth below, the Court finds that it lacks jurisdiction over the controversy and so it cannot reach the issues raised by the majority of the pending motions.  As such, the Court must dismiss Plaintiff's Complaint and deny the remaining motions as moot.

## I.  BACKGROUND

On June 16, 2023, Plaintiff Wittaya Theerachanon encountered mechanical issues with her truck as she traveled from Petersburg, Virginia en route to Fairfax, Virginia.  *See* Compl. Suppl.[4] 2, ECF No. 1-1.  Plaintiff stopped at a Hotel Super8 location in Fredericksburg to stay the night. *Id.*  Because Plaintiff was unsure whether her vehicle would be repaired, she booked reservations day-by-day, with final checkout on June 22.[5]  *Id.*  At some point during Plaintiff's stay at the Super8, she became fearful when a hotel employee kicked and repeatedly knocked on her door

---

[4] Plaintiff filed a supplemental Complaint as an attachment to her form-Complaint.  ECF No. 1-1.  For clarity of reference, the Court cites this document as "Complaint Supplement," despite its header merely stating, "Complaint."

[5] The email records attached to the Complaint show hotel reservations from June 16–17, June 18–20, and a final booking from June 21–22.  Compl. Ex. A, ECF. No 1-2.

demanding Plaintiff pay because payment for that night's stay was fifteen minutes overdue.  *Id.*

Plaintiff made the overdue payment to stay another night, but because she no longer felt safe at the

Super8, she stayed at another hotel that night.  *Id.* at 3.  Plaintiff was forced to leave her non-

running vehicle at the Super8 because it had not been fixed.  *Id.*

On June 21, 2023, Super8 called Plaintiff and asked her to move the vehicle.  *Id.* at 2–3.

She informed the hotel that the vehicle was inoperable, and that she was waiting on a mechanic.

*Id.*  That same day, the mechanic arrived at the hotel to examine Plaintiff's vehicle and notified

Plaintiff that her vehicle had been towed.  *Id.* at 3; Compl. Ex. C, ECF. No. 1-4.  Ultimately, Super8

had called a towing company, Shanks Towing, to impound Plaintiff's vehicle.

Shanks Towing never contacted Plaintiff after her vehicle was towed.  Compl. Supp.  4–5.

Instead, Shanks Towing sent Westlake an impound notice, which Westlake received on July 10,

2022.  *Id.*  Later, on July 22, 2023, Plaintiff received a letter from Westlake Financial Services

informing Plaintiff that Plaintiff's truck was being repossessed and that Westlake intended to sell

Plaintiff's truck.  *Id.* at 4.  At the time Plaintiff's truck was towed, Plaintiff was current on her car

loan payment.  *Id.*

Plaintiff alleges that Super8, Westlake, and Shanks Towing "must have conspired" to harm

Plaintiff.  *Id.* at 8.  She points out that Shanks Towing and Westlake "had direct contact with

eachother [sic]" and that "without any investigation from Westlake . . . . [t]he truck was taken

away" from Super8's parking lot while "the payment was made on time."  *Id.* at 4.  More

specifically, she alleges that Shanks Towing "cooperated with Hotel Super8" and Westlake "until

the harm was successful."  Compl. 4; Compl. Suppl. 1.  Plaintiff claims that it is "too complicated

for [her] to know" if the harassment she faced at Super8 is related to the wrongful repossession of

her truck, but she has nevertheless brought this action because the Court "might," after reviewing her Complaint, decide that Defendants conspired to harm her.  *Id.*

Separate from the events that took place between Plaintiff and Defendants in this case, Plaintiff describes two lawsuits that, at the time, were pending before the Delaware Chancery Court.  *Id.* at 1.  Plaintiff explains that the "Debt Collection Company and their Law Firm" (hereinafter jointly, "the Debt Collection Company") filed a lawsuit against Plaintiff and that she, in return, filed a malicious prosecution action against the Debt Collection Company.  *Id.*  Plaintiff alleges that the Debt Collection Company "ordered their network [here, Defendants] to take this wrong doing [sic] action" to intimidate Plaintiff so that she would withdraw her malicious prosecution action.  Compl. 4.  Plaintiff alleges that Defendants in this action "must be [the Debt Collection Company's] network" and claims "they are in the same debt collection business." Compl. Suppl. 1.

## II.  STANDARD OF REVIEW

### A.  Federal Rules of Civil Procedure 12(b)(1), 12(h)(3): Subject-Matter Jurisdiction

"The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'"  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) (alteration in original) (quoting *Mansfield, C. & L.M. Ry. Co. v. Swan*, 111 U.S. 379, 382 (1884)).  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).  While a party may challenge subject-matter jurisdiction by way of a motion pursuant to Federal Rule of Civil Procedure 12(b)(1), courts also have an independent obligation to screen for the existence of jurisdiction—or lack thereof.  *See Arbaugh v. Y & H Corp.*,

546 U.S. 500, 506 (2006) ("The objection that a federal court lacks subject-matter jurisdiction may be raised by a party, or by a court on its own initiative . . . ." (internal citations omitted)).

Challenges to jurisdiction fall into one of two categories: a facial attack, or a factual attack. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). In a facial attack, the movant argues that the complaint fails on its face to allege facts on which subject matter jurisdiction can be based. *Id.* In such a case, "the plaintiff, in effect, is afforded the same procedural protection [they] would receive under a Rule 12(b)(6) consideration." *Id.* (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). So "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Id.* In a factual attack, on the other hand, the moving party contends "that the jurisdictional allegations of the complaint" are simply "not true." *Id.* (quoting *Adams*, 697 F.2d at 1219). The court may then explore the factual predicate for jurisdiction by way of an evidentiary hearing, so long as the facts underpinning jurisdiction are not "intertwined with the facts central to the merits of the dispute." *Id.* at 192–93 (quoting *Adams*, 697 F.2d at 1219).

If the Court ultimately determines that jurisdiction is lacking and the party asserting jurisdiction "cannot truthfully amend" to cure the jurisdictional defect, dismissal without leave to amend is proper. 5B Charles A. Wright, Arthur R. Miller, & A. Benjamin Spencer, *Federal Practice & Procedure* § 1350 (4th ed. 2024).

**B. Federal Rule of Civil Procedure 12(b)(6): Failure to State a Claim**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint." *Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023) (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). Federal Rule of Civil Procedure 8 only requires that a complaint set forth "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in

order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The plaintiff's well-pleaded factual allegations are assumed to be true, and the complaint is viewed in the light most favorable to the plaintiff. *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the *reasonable* inference that the defendant is liable for the misconduct alleged." *Id.* (emphasis added) (citing *Twombly*, 550 U.S. at 556). Notably here, a *pro se* complaint is "to be liberally construed" and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted). "But liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure," *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020), nor does it require the Court to discern the unexpressed intent of a plaintiff or take on "the improper role of an advocate seeking out the strongest arguments and most successful strategy for a party," *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). So, a *pro se* complaint "must nevertheless set forth enough facts to state a claim." *Erwin v. FedEx Freight, Inc.*, 2023 WL 5959422, at *2 (E.D. Va. Sept. 13, 2023). "Labels and conclusions," a "formulaic recitation of the elements," and "naked assertions" without factual enhancement are insufficient. *Iqbal*, 556 U.S. 662, 678.

As in the 12(b)(1) jurisdictional context, dismissal for failure to state a claim without leave to amend is appropriate where it appears a plaintiff cannot cure the deficient pleading, such that permitting amendment would be futile. *Cozzarelli v. Inspire Pharms., Inc.*, 549 F.3d 618, 630 (4th Cir. 2008).

## III.  DISCUSSION

Plaintiff filed her Complaint on the Court's form "Complaint for Violation of Civil Rights," ostensibly predicating the action on either 42 U.S.C. § 1983 or *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *See* Compl. 4, ECF No. 1.  However, Plaintiff does not actually rest her claims on either § 1983 or *Bivens*. *See id.* at 3 (leaving blank sections A, B, and C of Part II, where the filer is asked to articulate whether they are suing under § 1983 or *Bivens*).  Rather, Plaintiff's claims focus generally on the harassment, discrimination, and hate crime(s) she allegedly suffered at the hands of Defendants. *See* Compl. 4; Compl. Suppl. 1.  Construing Plaintiff's allegations liberally, as it must, *Erickson*, 551 U.S. at 94, the Court considers whether Plaintiff has stated any claims over which this Court may exercise jurisdiction. For the reasons set forth below, the Court finds that she has not.

### A.  Plaintiff Fails to State a Claim Over Which This Court Has Jurisdiction

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  "They possess only such power as is authorized by the Constitution and statute . . . ." *Id.*  Generally, subject-matter jurisdiction exists where the well-pleaded complaint raises a federal question under 28 U.S.C. § 1331, or the parties meet the diversity and amount-in-controversy requirements under 28 U.S.C. § 1332.  Defendant Shanks Towing challenges jurisdiction by asserting that the "Complaint provides nothing in terms of how or why this Court has jurisdiction over any of the named [D]efendants in this matter."  Shanks Towing's

Mem. Supp. 7, ECF No. 39; *see generally id.* at 6–8.  Because this is a facial challenge, the Court affords the Plaintiff "the same procedural protection as she would receive under a Rule 12(b)(6) consideration."  *Kerns*, 585 F.3d at 192.  The Court first considers whether the Complaint states any claim giving rise to § 1331 federal question jurisdiction, and—finding none—next considers whether § 1332 diversity jurisdiction exists.

    1.  <u>No Federal Question Jurisdiction</u>

Title 28, United States Code, § 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." After careful review, the Court has determined that this civil action does not, in fact, arise under any of these federal sources.

As stated previously, Plaintiff filed her Complaint on the Court's form "Complaint for Violation of Civil Rights," ostensibly predicating the action on § 1983 or *Bivens*.  However, as the form itself notes, to state a claim under either option, a plaintiff must be suing state or local officials (for a § 1983 claim), or federal officials (for a *Bivens* claim).  Compl. 3.  As Defendants argue— and as the Court itself has previously observed—Plaintiff has not sued any state or local officials, rendering § 1983 inapplicable, and likewise Plaintiff has not sued any federal officials, rendering *Bivens* inapplicable.  *See* Shanks Towing's Mem. Supp. 7, 10–11; Super8's Mem. Supp. 4–5; Mem. Op., *Theerachanon*, 2024 WL 4294646, at \*1 n.1 (E.D. Va. Sept. 25, 2024), ECF No. 33.

Construing Plaintiff's allegations liberally, the Court does perceive a potential claim predicated on a separate civil rights statute, specifically 42 U.S.C. § 1985(3), which provides a cause of action for individuals who have been the subject of a conspiracy to deprive them of the equal protection of the laws of the United States.  To establish a cause of action under § 1985(3), a plaintiff must allege:

> (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.  Moreover, the law is well settled that to prove a section 1985 'conspiracy,' a claimant must show an agreement or a 'meeting of the minds' by defendants to violate the claimant's constitutional rights.

*Simmons v. Poe*, 47 F.3d 1370, 1376–77 (4th Cir. 1995) (citations omitted).  The Fourth Circuit has further elaborated on the level of specificity required to sufficiently plead a conspiracy:

> [W]here a conspiracy is alleged, the plaintiff must plead facts amounting to more than "parallel conduct and a bare assertion of conspiracy . . . . Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."  The factual allegations must plausibly suggest agreement, rather than being merely consistent with agreement.

*A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (omission in original) (quoting *Twombly*, 550 U.S. at 556–57).

Here, Plaintiff alleges two conspiracies: (1) a conspiracy between the Debt Collection Company and Defendants; and (2) a general conspiracy between Defendants.  Regarding the first conspiracy, Plaintiff alleges that Defendants "must be in [the Debt Collection Company's] network" and Defendants' actions in this case were meant to intimidate Plaintiff so that she would withdraw her case that was pending in Delaware's Chancery Court at the time.  Compl. Suppl. 1, 2.  As to Plaintiff's second conspiracy, Plaintiff's asserts that Defendants "must have conspired" to harm Plaintiff as Defendants were in "direct contact with eachother [sic]."  *Id.* at 4, 8.  Plaintiff specifically alleges that (1) Super8 harassed Plaintiff because of her transgender status and called Shanks Towing to tow her truck; (2) Shanks Towing towed Plaintiff's truck even though her vehicle payments were current; and (3) after towing her vehicle, Shanks Towing called Westlake, not Plaintiff, which led to her vehicle being repossessed by Westlake.  *Id.* at 4.

Defendants challenge Plaintiff's allegations of conspiracy.  Super8 first points out that Plaintiff conceded that it is "too complicated to know" whether Defendants conspired together. Super8's Mem. Supp. 4.  Next, Super8 and Shanks Towing both argue that Plaintiff's allegations fail to allege how Defendants conspired together, and that Plaintiff's statements amount to "rank speculation and conjecture."  *Id.*; Shanks Towing's Mem. Supp. 11.  The Court must agree.

Critically, Plaintiff's allegations lack any reference to the necessary "meeting of the minds" between Defendants.  *Simmons*, 47 F.3d at 1377.  Plaintiff's conspiracy allegations are threadbare and conclusory.  As to the first conspiracy, Plaintiff simply alleges Defendants "must be" in the Debt Collection Agency's "network," and that they are "networking," but she does not provide any details that they were networking or how they are networking other than claiming they are in the "same debt collection business."  Compl. Suppl. 1.  Plaintiff also provides no facts to support her bare assertion that Defendants collaborated with or were otherwise connected to the Debt Collection Company.  *See id.*

Plaintiff makes similarly conclusory claims as to the second conspiracy, stating simply that Defendants in this case "must have conspired."  *Id.* at 8.  In an apparent effort to support this claim, Plaintiff highlights Super8's treatment of her, which she attributes to her status as a transgender woman.  *Id.* at 1–2.  Plaintiff also acknowledges that Super8 called her, asked her to move her truck, and that her vehicle was towed after the conversation; but, she does not suggest that her car being towed or being repossessed was related to her status as a transgender woman or to Super8's harassment.  *See generally id.*  Further, Plaintiff does not contend that her transgender status was itself the reason Shanks Towing contacted Westlake, or the reason Westlake repossessed her vehicle.  *Id.*  Even though Plaintiff did allege specific communications between Defendants about (1) towing the vehicle and (2) Shanks Towing contacting Westlake rather than Plaintiff, nothing

suggests a "meeting of the minds" to "deprive the plaintiff of the equal enjoyment of rights secured by the law to all." *Simmons*, 47 F.3d at 1376–77.  Similarly, Plaintiff makes no assertions that Super8, by calling Shanks Towing, agreed with the remaining Defendants that Plaintiff's vehicle should be unlawfully repossessed.  *See generally* Compl.; Compl. Suppl.

Throughout her Complaint, Plaintiff's own allegations undercut her claim that a conspiracy existed at all.  Compl. Suppl. 1, 4.  Plaintiff includes in her filings questions directed at Defendants—possibly in an early effort at discovery—with respect to whether "all incidents happened" as a "conspiracy . . . to harm and intimidate" Plaintiff with the goal of "putting the Plaintiff in fear and withdrawing [her] lawsuit" against the Debt Collection Company.  *Id.* Similarly, Plaintiff herself expresses doubt about the existence of a conspiracy between Defendants.  Plaintiff admits that it is "too complicated for Plaintiff to know" whether "Hotel Harassment . . . had anything related to the Wrongful Repossession."  *Id.* at 4.  Plaintiff suggests that more information from Defendants "might lead" the Court to decide whether the Defendants were involved in "a conspiracy."  *Id.*

It is Plaintiff's burden to allege facts sufficient to support a conspiracy claim.  Plaintiff's doubtful statements about the existence of a conspiracy combined with other her bare-bones, conclusory allegations are insufficient for the court to draw a reasonable inference of the necessary "meeting of the minds."  *Soc'y Without A Name*, 655 F.3d at 346.  Plaintiff's allegations amount, without more, to mere "parallel conduct" that does not adequately support a conspiracy claim.  *Id.* As such, Plaintiff fails to state any cognizable claim under § 1985.  And because this erstwhile conspiracy-against-civil-rights claim was Plaintiff's only claim against Shanks Towing, the Court will grant Shanks Towing's Motion to Dismiss.

The remainder of Plaintiff's allegations against the remaining Defendants give rise, at most, to state law claims, to wit: breach of contract under Va. Code Ann. § 59.1-507.1; unlawful repossession under Va. Code Ann. § 6.2-2217; and harassment or intimidation based on gender identity under Va Code Ann. § 8.01-42.1.  *See generally* Compl. Suppl.  Absent any foundation in "the Constitution, laws, or treaties of the United States," Plaintiff has failed to state any claim upon which federal question jurisdiction may rest.  Before considering whether Plaintiff in fact states a claim based on any of these state laws, however, the Court must determine whether it has jurisdiction to even engage in that analysis.

2. No Diversity Jurisdiction

Federal district courts may hear actions predicated on state law if two requirements are met.  *See* 28 U.S.C. § 1332(a); *see also Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373–74 (1978).  First, the opposing parties must be diverse, meaning that they may not share the same state of citizenship.  28 U.S.C. § 1332(a); *Athena Automotive, Inc. v. DiGregorio*, 166 F.3d 288, 290 (4th Cir. 1999).  Second, the amount-in-controversy must exceed $75,000, exclusive of interest and costs.  28 U.S.C. § 1332(a)*.*  Only if both requirements are met does the Court have diversity jurisdiction.

Based on the address of record provided in the Complaint, Compl. 2, Plaintiff appears to be a Virginian citizen.  As such, the Court may only exercise diversity jurisdiction over the remaining state law claims against Super8 and Westlake if neither Super8 nor Westlake are citizens of Virginia.  Corporate defendants such as Super8 "shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."  28 U.S.C. § 1332(c).  In contrast, LLC defendants such as Westlake are deemed to be a citizen of every state in which any member of the LLC is a citizen.  *See Cent. W. Va. Energy*

*Co. v. Mountain State Carbon, L.L.C.*, 636 F.3d 101, 103 (4th Cir. 2011); *Travelers Indem. Co.*

*Am. v. Portal Healthcare Sols*., LLC, 644 F. App'x 245, 246 (4th Cir. 2016).

Generally, the Court does not contemplate extrinsic material when evaluating a complaint

on a motion to dismiss.  However, the Court may consider matters of public record subject to

judicial notice.  *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).  Here, the

Court takes judicial notice of Virginia State Corporation Commission records reflecting that

Super8, i.e., the corporate entity Shiv Sai VA, Inc. d/b/a Hotel Super 8 of Fredericksburg, VA, is

incorporated in Virginia and has a principal place of business in Virginia, and is therefore a citizen

of this state.  *See* State Corporation Commission Clerk's Information System, "SHIV SAI VA

INC. Entity Information" (last accessed Nov. 20, 2024).[6]  Because the case involves a Virginia-

resident Plaintiff and at least one Virginia-resident Defendant, the Court need not engage in the

more complicated process of ascertaining the citizenship of Westlake, an LLC; complete diversity

is clearly lacking, and the Court is therefore unable to exercise diversity jurisdiction pursuant to

§ 1332.[7]

## B.  The Court Will Dismiss the Complaint, But Grant Plaintiff Leave to Amend

When a court lacks subject-matter jurisdiction, it must dismiss the action.  Fed. R. Civ. P.

12(h)(3).  Because it is not plain on the face of the Complaint that amendment would be futile,

dismissal should, in this instance, be without prejudice.  However, out of deference to Plaintiff's

*pro se* status, the Court will not yet dismiss the action.  Instead, Plaintiff will be ordered to show

cause why the action should not be dismissed by filing an Amended Complaint, which MUST:

     (i)    be clearly labeled as Plaintiff's Amended Complaint;

---

[6] *Available at* https://cis.scc.virginia.gov/EntitySearch/BusinessInformation?businessId=11286991&source=FromEntityResult&isSeries%20=%20false.

[7] The Court does note that the amount in controversy requirement has been met, since Plaintiff seeks $400,000 in damages from each Defendant.

(ii)   clearly identify all Defendants against whom Plaintiff intends to assert claims;

(iii)   clearly state, with specificity, each claim that Plaintiff intends to assert against each Defendant; and

(iv)   clearly set forth all factual allegations upon which each asserted claim is based.

If Plaintiff fails to comply with any of the above, or if it is apparent on the face of the Amended Complaint that jurisdiction is lacking, the Court will dismiss the action in its entirety.  *See* Fed. R. Civ. P. 12(h); Fed. R. Civ. P. 41(b).

## IV.  CONCLUSION

For the foregoing reasons, the Court finds that it lacks jurisdiction over this controversy as alleged in the Complaint.  So lacking in jurisdiction, the Court will grant Shanks Towing's Motion to Dismiss with respect to Rule 12(b)(1), dismiss the Complaint, and deny all remaining motions as moot.  The Court will further order Plaintiff to show cause why the action should not be dismissed.

An appropriate Order will accompany this Memorandum Opinion.

_____ /s/
Roderick C. Young
United States District Judge

Date: <u>January 2, 2025</u>
Richmond, Virginia

14